**2021 WI App 19**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2020AP858

†Petition for Review filed

Complete Title of Case:

### LAKELAND AREA PROPERTY OWNERS ASSOCIATION, U.A.,

### †PLAINTIFF-APPELLANT,

### V.

### ONEIDA COUNTY AND COUNTY MATERIALS CORPORATION,

### DEFENDANTS-RESPONDENTS.

| | |
|---|---|
| Opinion Filed: | February 23, 2021 |
| Submitted on Briefs: | January 19, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Joseph R. Cincotta* of *Joseph R. Cincotta, LLC*, Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent, Oneida County, the cause was submitted on the brief of *Ronald S. Stadler* and *Jonathan E. Sacks* of *Jackson Lewis, P.C.*, Milwaukee. |
| | On behalf of the defendant-respondent, County Materials Corporation, the cause was submitted on the brief of *Shane J. VanderWaal* and *Arthur M. Scheller III* of *Dietrich VanderWaal, S.C.*, Wausau. |

COURT OF APPEALS
DECISION
DATED AND FILED

February 23, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP858**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2019CV16**

**IN COURT OF APPEALS**

---

LAKELAND AREA PROPERTY OWNERS ASSOCIATION, U.A.,

   PLAINTIFF-APPELLANT,

V.

ONEIDA COUNTY AND COUNTY MATERIALS CORPORATION,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from orders of the circuit court for Oneida County: MICHAEL H. BLOOM, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    STARK, P.J.   This appeal arises from Oneida County's decision to rezone property owned by County Materials Corporation ("CMC").[1]   CMC petitioned the County for the rezoning so that it could operate a gravel mine on the

---

[1]  The parties refer to County Materials Corporation as "CMC," and we follow their lead.

property.  Lakeland Area Property Owners Association, U.A., ("Lakeland") opposed the rezoning and ultimately filed the instant lawsuit against the County and CMC, asserting various claims.  The circuit court dismissed each of Lakeland's claims and subsequently denied Lakeland's motion for reconsideration.

¶2      Lakeland now appeals both the order dismissing its claims and the order denying its reconsideration motion.  Lakeland first argues that the County's decision to rezone the property violated WIS. STAT. § 66.1001(3) (2017-18),[2] because the rezoning was inconsistent with the applicable comprehensive plan.  We conclude the rezoning was consistent with the Town of Hazelhurst's 2018 comprehensive plan and, as such, did not violate § 66.1001(3).  We therefore affirm the circuit court's decision to dismiss Lakeland's claim seeking a declaration that the rezoning violated that statute.

¶3      Lakeland also contends that the circuit court erred by dismissing its claim seeking a declaration that it owns the subsurface mineral rights for the property at issue in this case.  Lakeland argues the court erroneously determined that its interest in the mineral rights had lapsed under WIS. STAT. § 706.057(3).  Lakeland also argues that the court's interpretation of § 706.057(3) is unconstitutional as applied to Lakeland because it results in a taking of Lakeland's property without just compensation.

¶4      We conclude the circuit court properly interpreted WIS. STAT. § 706.057(3).  Under the plain language of that statute, Lakeland's interest in the mineral rights lapsed because, although Lakeland's predecessors in interest initially recorded their claims for the mineral rights in 1987, they subsequently failed to

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

"use" the mineral rights at any point during the following twenty-year period. We further conclude that under the United States Supreme Court's decision in ***Texaco v. Short***, 454 U.S. 516 (1982), our interpretation of § 706.057(3) does not result in an unconstitutional taking. We therefore affirm the court's dismissal of Lakeland's mineral rights claim.

## BACKGROUND

¶5     In July 2014, Nationwide Limited Partnership ("Nationwide") purchased a ten-acre parcel of property ("the Property") located in the Town of Hazelhurst in Oneida County. Nationwide intended that CMC, its affiliate, would operate a gravel mine on the Property. CMC already owned and operated a gravel mine on a parcel of land adjacent to the Property.

¶6     On December 26, 2017, CMC petitioned the County to rezone the Property from "Business" to "Manufacturing & Industrial." The rezoning was necessary for CMC to seek a conditional use permit ("CUP") to conduct nonmetallic mining on the Property. The County referred the rezoning petition to the Town of Hazelhurst Plan Commission for review. On April 10, 2018, the Town Board unanimously recommended that the County approve the petition. On July 11, 2018, the County's Planning and Development Committee also recommended approval of the petition. The County Board subsequently approved the petition and rezoned the Property to "Manufacturing & Industrial" on August 21, 2018. The County later granted CMC a CUP allowing it to conduct nonmetallic mining on the Property. The decision to grant the CUP, however, is not at issue in this appeal.

¶7     Lakeland filed suit against the County in January 2019, and it later filed a second amended complaint naming CMC as an additional defendant. Lakeland     sought     a     declaratory     judgment     that     the     rezoning     of     the

Property: (1) constituted illegal spot zoning; (2) violated WIS. STAT. § 66.1001(3) because it was inconsistent with the applicable comprehensive plan; and (3) would give rise to an illegal nonconforming use of CMC's adjacent parcel.

¶8 With respect to CMC, Lakeland also sought a declaration of interest in mineral rights. It alleged that three of its members owned the subsurface mineral rights for the Property and had recorded a statement of their claims with the Oneida County Register of Deeds on January 12, 1987. Lakeland therefore asked the circuit court to declare that those members—not CMC—owned the subsurface mineral rights. The three members in question subsequently assigned their interests in the mineral rights to Lakeland.

¶9 The County moved for summary judgment on all three of Lakeland's claims against it. CMC filed a motion to dismiss Lakeland's illegal nonconforming use claim, and it later moved for summary judgment on all four of Lakeland's claims. In March 2020, the circuit court entered a written order granting both defendants' summary judgment motions and CMC's motion to dismiss. As relevant to this appeal, the court concluded that: (1) the rezoning did not violate WIS. STAT. § 66.1001(3) because it was consistent with the Town of Hazelhurst's 2018 comprehensive plan, which the County's comprehensive plan incorporated; (2) Lakeland's interest in the mineral rights for the Property had lapsed under WIS. STAT. § 706.057(3), and the lapse had not been cured; and (3) CMC lawfully claimed an interest in the mineral rights under § 706.057(6)(a).

¶10 Lakeland subsequently filed a motion for reconsideration of the circuit court's order dismissing its claims. Lakeland argued the court had considered the wrong version of the Town's comprehensive plan in its analysis of Lakeland's claim that the rezoning violated WIS. STAT. § 66.1001(3). Lakeland also argued that the

4

court's interpretation of WIS. STAT. § 706.057(3) rendered that statute unconstitutional as applied to Lakeland. The court denied Lakeland's reconsideration motion.

¶11 Lakeland now appeals, raising three issues. First, Lakeland argues the circuit court erred by granting the County and CMC summary judgment on Lakeland's claim that the rezoning violated WIS. STAT. § 66.1001(3). Second, Lakeland argues the court erred by concluding that its interest in the mineral rights for the Property had lapsed under WIS. STAT. § 706.057(3). Third, Lakeland renews its contention that the court's interpretation of § 706.057(3) renders that statute unconstitutional as applied to Lakeland. We address these arguments in turn, including additional facts where necessary.

**DISCUSSION**

**I. Standards of review**

¶12 We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). Here, the circuit court's summary judgment rulings turned on questions of statutory interpretation, which we also review independently. *See McNeil v. Hansen*, 2007 WI 56, ¶7, 300 Wis. 2d 358, 731 N.W.2d 273.

¶13 In addition, this appeal requires us to determine whether the circuit court's interpretation of WIS. STAT. § 706.057(3) renders that statute

unconstitutional as applied to Lakeland. "Any attack on the constitutionality of a statute presents a question of law subject to de novo review." *Dane Cnty. v. McGrew*, 2005 WI 130, ¶8, 285 Wis. 2d 519, 699 N.W.2d 890.

¶14 Finally, in addition to appealing the order dismissing its claims, Lakeland also appeals the circuit court's order denying its motion for reconsideration. "To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853. We review a circuit court's decision on a motion for reconsideration using the erroneous exercise of discretion standard of review. *Id.*, ¶6. Under that standard, we will affirm a discretionary decision as long as the court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a reasonable conclusion. *Franke v. Franke*, 2004 WI 8, ¶54, 268 Wis. 2d 360, 674 N.W.2d 832.

## II. Lakeland's claim asserting a violation of WIS. STAT. § 66.1001(3)

¶15 Lakeland first argues that the circuit court erred by granting the County and CMC summary judgment on Lakeland's claim that the rezoning violated WIS. STAT. § 66.1001(3). Specifically, Lakeland asserts that the rezoning violated § 66.1001(3)(j), which states that a County zoning ordinance enacted under WIS. STAT. § 59.69 "shall be consistent with [the County's] comprehensive plan." In response, the County argues that we need not address the merits of Lakeland's argument regarding § 66.1001(3) because that statute does not give rise to a private right of action, and Lakeland's claim therefore fails as a matter of law.

6

¶16     We decline to address the County's argument that WIS. STAT. § 66.1001(3) does not give rise to a private right of action. In support of that argument, the County relies heavily on our decision in ***DSG Evergreen Family Ltd. Partnership v. Town of Perry***, No. 2017AP2352, unpublished slip op. (WI App Dec. 20, 2018) (***DSG I***). The County does not acknowledge, however, that our decision in ***DSG I*** was reversed by the supreme court in February 2020—more than eight months before the County filed its brief in this appeal. *See **DSG Evergreen Fam. Ltd. P'ship v. Town of Perry***, 2020 WI 23, 390 Wis. 2d 533, 939 N.W.2d 564 (***DSG II***). The County does not address how the supreme court's decision in ***DSG II*** affects our analysis of whether a private right of action exists under the circumstances of this case. Moreover, in its reply brief, Lakeland completely fails to respond to the County's argument that § 66.1001(3) does not give rise to a private right of action. We therefore lack the benefit of developed briefing from either the County or Lakeland regarding this issue.

¶17     We will not abandon our neutrality to develop arguments for the parties. ***Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82. Here, addressing the County's claim that WIS. STAT. § 66.1001(3) does not give rise to a private right of action would require us to do just that, given the parties' inadequate briefing on the issue. In any event, we need not address all arguments raised by the parties if one of those arguments is dispositive. ***Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716. We therefore choose to assume, without deciding, that § 66.1001(3) gives rise to a private right of action. We also assume, without deciding, that Lakeland's appeal of the circuit court's decision dismissing its claim under that statute is not moot. Nevertheless, we conclude the court properly dismissed

7

Lakeland's claim on summary judgment because the undisputed facts establish that the County's rezoning of the Property did not violate § 66.1001(3).

¶18     In 2013, the County adopted a comprehensive plan that incorporated by reference the comprehensive plans for each town located in the County. As noted above, the Property at issue in this appeal is located in the Town of Hazelhurst. The Town adopted a comprehensive plan in 1999. CMC filed its petition asking the County to rezone the Property in December 2017. The Town began taking steps to amend its comprehensive plan in December 2017, and it adopted an amended plan in January 2018.

¶19     The circuit court concluded that, for purposes of WIS. STAT. § 66.1001(3), it needed to determine whether the County's rezoning of the Property was consistent with the Town's 2018 comprehensive plan. Lakeland argues the court erred in that regard and should have instead applied the Town's 1999 comprehensive plan. In support of its argument, Lakeland cites WIS. STAT. § 66.10015(2)(a), which states that a political subdivision "shall approve, deny, or conditionally approve" a zoning application "based on existing requirements, unless the applicant and the political subdivision agree otherwise." Because the Town's 1999 comprehensive plan was in effect when CMC filed its rezoning application, Lakeland argues the 1999 plan set forth the "existing requirements" for approval of that application under § 66.10015(2)(a).[3]

---

[3] The County contends Lakeland has "no standing or other ability" to argue that the County or the circuit court violated WIS. STAT. § 66.10015(2)(a) by applying the wrong comprehensive plan. In support of this argument, the County asserts that § 66.10015(2) "essentially codified" Wisconsin's common law building permit rule. The County then contends that "[t]he building permit rule, and now … § 66.10015(2), do not inure to the benefit of third parties."

8

¶20      The circuit court concluded the Town's 2018 comprehensive plan applied to CMC's rezoning application because the only reasonable inference, based on the undisputed facts, was that the County and CMC had agreed to apply the 2018 plan. *See* WIS. STAT. § 66.10015(2)(a). We agree with the court's analysis. It is undisputed that in May 2014, the Town rejected a rezoning application filed by CMC, which was nearly identical to the application at issue in this case, on the grounds that the proposed rezoning would be inconsistent with the Town's 1999 comprehensive plan. CMC later submitted essentially the same application in December 2017, and the Town adopted its amended comprehensive plan in January 2018. Given that both the Town and the County subsequently approved CMC's December 2017 application, and given that CMC's prior application had already been deemed inconsistent with the 1999 comprehensive plan, the only reasonable inference is that the Town and the County evaluated the December 2017 application under the 2018 comprehensive plan.

¶21      Moreover, the only reasonable inference from the record is that CMC agreed that the County could apply the 2018 comprehensive plan when considering CMC's December 2017 rezoning application. As the circuit court aptly explained in its decision denying reconsideration:

> [Lakeland's] argument that CMC, rather than have the Town and County consider its application in light of the more favorable land use plan adopted [in January 2018], preferred to have its application determined based on the 1999 plan that the Town had previously and explicitly used to deny a

---

The County, however, does not cite any legal authority supporting its assertion that WIS. STAT. § 66.10015(2)(a) was intended to codify the common law building permit rule. Nor does the County cite any legal authority supporting its claim that neither the building permit rule nor § 66.10015(2)(a) inure to the benefit of third parties. We need not consider arguments that are unsupported by references to legal authority. *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). We therefore decline to consider the County's argument that Lakeland lacks standing to assert a violation of § 66.10015(2)(a).

9

more or less identical application is counterintuitive to the point of being unreasonable.

In addition, the record clearly indicates that the Town Plan Commission, the Town Board, the County Planning and Development Committee, and the County Board all looked favorably on CMC's rezoning application. The Town's position had clearly changed since 2014, whether as a result of its updated land use plan or for some other reason or reasons. For whatever reason, as of 2018, CMC, the Town Plan Commission, the Town Board, the County Planning and Development Committee, and the County Board all wanted to see the rezoning occur. Why would any of these entities, in the face of a recently enacted land use plan that was relatively favorable to it, want a proposed rezoning of which they all approved assessed pursuant to a two-decade old plan that had previously served as a basis to preclude it? To infer as much would be, in the court's judgment, unreasonable.

¶22 Lakeland argues the circuit court erred by concluding that CMC and the County agreed to use the 2018 comprehensive plan because, in Lakeland's view, an agreement under WIS. STAT. § 66.10015(2)(a) must be "a formal reviewable agreement, and [must] at least [be] memorialized in meeting minutes." The court rejected this argument in its decision denying reconsideration, and, again, we agree with its analysis. Section 66.10015(2)(a) merely states that when an applicant submits a zoning application, the existing requirements apply "unless the applicant and the political subdivision agree otherwise." Nothing in the statute's text indicates that such agreement must be formal, in writing, or memorialized in meeting minutes. As the circuit court correctly noted, "The statutory language does not dictate *how* or *when* the parties must agree, only *that* they agree."

¶23 In its motion for reconsideration, Lakeland also argued that a document denominated "Exhibit 117" showed that CMC and the County did not agree to use the 2018 plan. Lakeland contends that Exhibit 117 is a "memorandum" authored by "CMC's representative James Small." The document states that it was

10

prepared on July 3, 2018, in preparation for a July 11, 2018 hearing—presumably the meeting of the County's Planning and Development Committee that occurred on that date. Lakeland notes that Exhibit 117 references the Town's 1999 plan, rather than the 2018 plan, when addressing whether the rezoning would be consistent with the applicable comprehensive plan.[4]

¶24 As the circuit court correctly concluded in its decision denying reconsideration, Lakeland's reliance on Exhibit 117 is misplaced. That document does not show that the County and CMC agreed to use the 1999 comprehensive plan, nor does it call into question the reasonable inference raised by other evidence in the record that they agreed to use the 2018 plan. Exhibit 117 merely observes that the Town adopted a comprehensive plan in 1999 and discusses some of the provisions of that plan. We agree with the circuit court that these mere references to the 1999 plan in a single document do not give rise to a reasonable inference that CMC agreed the County should assess the proposed rezoning under that plan.

¶25 Moreover, as the County notes, the County Board's vote to rezone the Property did not take place until August 21, 2018. We agree with the County that what matters—for purposes of determining the applicable comprehensive plan under WIS. STAT. § 66.10015(2)(a)—is whether the County and CMC had agreed to proceed under the 2018 comprehensive plan as of the date of the County Board's

---

[4] The County argues we should not consider Exhibit 117 because it is inadmissible. Specifically, the County argues that Lakeland failed to properly authenticate or provide an adequate foundation for Exhibit 117. The circuit court never made any determination as to whether Exhibit 117 was admissible. Instead, the court considered Exhibit 117 and determined it did not support Lakeland's argument that CMC and the County did not agree to use the 2018 comprehensive plan.

As noted above, we need not address all arguments raised by the parties when one of those arguments is dispositive. *Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716. Here, like the circuit court, we conclude Exhibit 117 does not support Lakeland's argument that that CMC and the County did not agree to use the 2018 comprehensive plan. Accordingly, we need not address the County's argument that Exhibit 117 is inadmissible.

vote. As such, the fact that a CMC representative referred to the 1999 plan in a July 2018 memo does not show that the County and CMC ultimately agreed to use the 1999 plan, or failed to reach an agreement to use the 2018 plan. Again, the only reasonable inference, based on the evidence discussed above, is that the County and CMC agreed to use the 2018 plan.

¶26 For these reasons, we reject Lakeland's argument that the circuit court erred in its summary judgment analysis by applying the Town's 2018 comprehensive plan, rather than its 1999 plan. We further conclude that the court did not erroneously exercise its discretion by denying Lakeland's reconsideration motion on that basis, as Lakeland did not present any newly discovered evidence in support of its motion or show that the court made a manifest error of law or fact by applying the 2018 comprehensive plan. *See Koepsell's Olde Popcorn Wagons*, 275 Wis. 2d 397, ¶44.

¶27 Lakeland next argues that even if the circuit court correctly determined that the County and CMC agreed to use the 2018 comprehensive plan, the court erred by concluding the rezoning was consistent with that plan. For purposes of WIS. STAT. § 66.1001, the term "consistent with" means "furthers or does not contradict the objectives, goals, and policies contained in the comprehensive plan." Sec. 66.1001(1)(am).

¶28 Applying this definition, we conclude the circuit court properly determined, as a matter of law, that the rezoning was consistent with the 2018 comprehensive plan. The 2018 plan includes a "Future Land Use" map. The plan states that the "Future Land Use" map "illustrates the anticipated future pattern of land uses" and "includes ten *land use classifications* to guide where new development should be encouraged to locate." The map designates the future use

12

of the Property as "Industrial." The County's rezoning of the Property from "Business" to "Manufacturing & Industrial" was consistent with that designation.

¶29 Lakeland argues we may not consider the "Future Land Use" map when determining whether the rezoning was consistent with the 2018 comprehensive plan. Instead, Lakeland argues we may consider only the "narrative" portion of the plan in our consistency analysis. However, Lakeland cites no legal authority in support of this proposition. Furthermore, nothing in the plain language of WIS. STAT. § 66.1001 indicates that we may not consider a map included in a comprehensive plan when determining whether a rezoning is consistent with that plan. In fact, § 66.1001(2)(h) expressly requires a comprehensive plan to include a land-use element, which must include "[a] compilation of objectives, policies, goals, *maps* and programs to guide the future development and redevelopment of public and private property." (Emphasis added.) Given that the statute requires a comprehensive plan to include land use maps, it would be unreasonable to conclude that a decision maker may not consider those maps when determining whether a proposed change is consistent with the plan.

¶30 Lakeland also argues that regardless of what the "Future Land Use" map in the 2018 comprehensive plan shows, the rezoning at issue here is inconsistent with the narrative portion of the plan, which states that "[a]dditional industrial development will be welcomed in the Town in places away from [U.S. Highway] 51." Because the Property directly abuts U.S. Highway 51, Lakeland argues rezoning the Property to allow industrial use is inconsistent with this language.

13

¶31 We disagree. The problem with Lakeland's interpretation is that it fails to read the language quoted above in context with the remainder of the 2018 comprehensive plan, including the "Future Land Use" map. As noted above, the map clearly designates the intended future use of the Property as "Industrial." Given that designation, the only reasonable interpretation of the plan's statement that the Town welcomes "additional" industrial development away from U.S. Highway 51 is that it refers to industrial development beyond that which already exists or has already been contemplated by the Town on the "Future Land Use" map. As such, the County's rezoning of the Property to permit industrial use is not inconsistent with the narrative portion of the 2018 comprehensive plan.

¶32 Finally, Lakeland notes that the circuit court found there was no evidence that either the Town or the County had performed a consistency analysis before approving the rezoning. Lakeland then asserts that the court "was not the proper forum to conduct the consistency analysis in the first instance."

¶33 Again, Lakeland fails to cite any legal authority in support of its argument. WISCONSIN STAT. § 66.1001(3)(j) merely states that a county zoning ordinance "shall be consistent with" the applicable comprehensive plan. It does not expressly require the County to perform a consistency analysis before enacting a zoning ordinance. Here, for the reasons explained above, we conclude as a matter of law that the rezoning of the Property was consistent with the Town's 2018 comprehensive plan. As such, the rezoning did not violate § 66.1001(3), and the circuit court properly granted the County and CMC summary judgment on Lakeland's claim under that statute.

## III. Lakeland's mineral rights claim

### A. *Interpretation of WIS. STAT. § 706.057(3)*

¶34 Lakeland also argues the circuit court erred by granting CMC summary judgment on Lakeland's claim that it owns the subsurface mineral rights for the Property. Specifically, Lakeland asserts the court erred by concluding that its interest in the mineral rights had lapsed under WIS. STAT. § 706.057(3). That subsection states:

> (3) LAPSE.
>
> (a) Except as provided in par. (b) or (c), an interest in minerals lapses if the interest in minerals was not used during the previous 20 years.
>
> (b) An interest in minerals which was not used during the 20-year period prior to July 1, 1984, does not lapse if the interest in minerals is used within 3 years after July 1, 1984.
>
> (c) An interest in minerals which was used during the period from 17 to 20 years prior to July 1, 1984, does not lapse if the interest in minerals is used within 3 years after July 1, 1984.

Section 706.057(2), in turn, provides that an interest in minerals is "used" if any of the following occur:

> (a) Any minerals are mined in exploitation of the interest in minerals.
>
> (b) A conveyance of mineral interests is recorded under this chapter.
>
> (c) Any other conveyance evidencing a transaction by which the interest in minerals is created, aliened, reserved, mortgaged or assigned is recorded under this chapter.
>
> (d) Property taxes are paid on the interest in minerals by the owner of the interest in minerals.
>
> (e) The owner of the interest in minerals records a statement of claim under sub. (4) or (5) concerning the interest in minerals.

15

¶35     It is undisputed that Lakeland's predecessors in interest did not "use" their interest in the subsurface mineral rights for the Property at any time before July 1, 1984. It is further undisputed that Lakeland's predecessors "used" their interest in the mineral rights by recording a statement of their claims with the Oneida County Register of Deeds on January 12, 1987. Lakeland argues these undisputed facts establish that its interest in the mineral rights has not lapsed because, under WIS. STAT. § 706.057(3)(b), an interest in mineral rights that was not used during the twenty-year period before July 1, 1984, "does not lapse" if used within three years after that date. In other words, Lakeland argues that because its predecessors used their interest in the mineral rights by timely recording a statement of their claims during the three-year period following July 1, 1984, that interest can never lapse, regardless of whether it is ever used again.

¶36     We reject Lakeland's interpretation of WIS. STAT. § 706.057(3) because it is inconsistent with the statute's plain language. When interpreting a statute, our analysis begins with the statutory text. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* In addition, statutory language must be interpreted "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* (citation omitted).

¶37     WISCONSIN STAT. § 706.057(3)(a) clearly states that an interest in minerals lapses if it "was not used during the previous 20 years." Thus, the statute

16

sets forth a general rule that an interest in minerals must be used at least once every twenty years to avoid lapsing. Section 706.057 went into effect on July 1, 1984. *See* 1983 Wis. Act 455, § 7. As such, § 706.057(3)(a), standing alone, would cause all mineral rights that were not used during the twenty-year period before the statute's effective date to lapse automatically on that date, without their owners having the opportunity to prevent the lapse. To avoid this result, § 706.057(3)(b) created a three-year grace period—lasting from July 1, 1984, to July 1, 1987— during which such owners could use their rights and thereby prevent the automatic lapse that would have otherwise occurred under § 706.057(3)(a).

¶38 Reading WIS. STAT. § 706.057(3)(b) in context with § 706.057(3)(a), it is therefore clear that when subsec. (3)(b) states that an interest in minerals that was not used during the twenty-year period before July 1, 1984, "does not lapse" if used during the three-year period after that date, it does not mean that such an interest will never lapse if used during the requisite three-year period. Rather, subsec. (3)(b) clearly means that such use prevents the lapse that would have otherwise occurred under subsec. (3)(a) due to the owner's failure to use the interest during the twenty-year period before July 1, 1984. We therefore agree with CMC and the circuit court that the use of an interest in mineral rights during the three-year period specified in subsec. (3)(b) does not permanently prevent that interest from lapsing. Instead, once an interest has been used during the requisite three-year period, it is again subject to subsec. (3)(a) and will therefore lapse if not used at least once every twenty years.

¶39 To rule otherwise would create an absurd result. If we adopted Lakeland's interpretation of WIS. STAT. § 706.057(3)(b), all mineral rights owners who did not use their interests during the twenty years before July 1, 1984, could have permanently prevented their interests from lapsing simply by using them once

17

between July 1, 1984, and July 1, 1987. Conversely, all owners who acquired mineral rights after July 1, 1984, would be required to use those rights at least once every twenty years to avoid a lapse. We agree with CMC that there is no logical basis for such disparate treatment of these similarly situated property owners. Lakeland does not posit any reason why the legislature would have chosen to impose different use requirements on different mineral rights owners based on when they acquired their rights.

¶40 Lakeland argues that our interpretation of WIS. STAT. § 706.057(3)(b) renders § 706.057(5) surplusage. Section 706.057(5) provides:

> CURE OF LAPSE. The lapse of an interest in minerals under sub. (3) is cured if the owner of the interest in minerals records a statement of claim complying with all of the requirements of sub. (4) before the surface owner records a statement of claim under sub. (6)(a) or before a statement of claim takes effect under sub. (6)(b)1., whichever is later.

Lakeland argues § 706.057(3)(b) cannot have been intended as a means for owners to cure lapsed rights because subsec. (5) already provides a method for them to do so.

¶41 We do not, however, interpret WIS. STAT. § 706.057(3)(b) as providing mineral owners with a way to "cure" lapsed rights. Instead, we interpret § 706.057(3)(b) as preventing lapses that would have otherwise occurred automatically under § 706.057(3)(a) for all mineral rights owners who did not use their rights during the twenty-year period before July 1, 1984. Section 706.057(5) serves a different purpose; namely, it provides a means for all mineral rights owners to cure lapses in their rights, regardless of when those lapses occurred. As such, our interpretation of § 706.057(3)(b) does not render § 706.057(5) surplusage.

¶42     Applying our interpretation of WIS. STAT. § 706.057(3) to the undisputed facts of this case, we conclude the circuit court properly granted CMC summary judgment on Lakeland's mineral rights claim.  It is undisputed that Lakeland's predecessors in interest did not use their mineral rights at any point before July 1, 1984, but they subsequently used their mineral rights by recording a statement of their claims on January 12, 1987.  That use prevented the mineral rights from lapsing at that time, pursuant to § 706.057(3)(b).

¶43     However, it is also undisputed that Lakeland's predecessors in interest did not use their mineral rights at any time during the twenty-year period following January 12, 1987.  As a result, their interests in the mineral rights lapsed on January 13, 2007.  It is further undisputed that neither Lakeland nor its predecessors cured that lapse pursuant to WIS. STAT. § 706.057(5) before Nationwide, CMC's affiliate, recorded statements of claim regarding the mineral rights in November 2019.  Under these circumstances, the circuit court correctly concluded that CMC/Nationwide had lawfully claimed an interest in the mineral rights under § 706.057(6)(a). Lakeland's claim seeking a declaration that it owned the mineral rights therefore failed as a matter of law.

*B.  Constitutionality of WIS. STAT. § 706.057(3)*

¶44     Lakeland argues the circuit court's interpretation of WIS. STAT. § 706.057(3), which we adopt on appeal, renders the statute unconstitutional as applied to Lakeland.  In response, CMC argues we should refuse to consider this argument because it was raised for the first time in Lakeland's motion for reconsideration.  CMC correctly observes that a motion for reconsideration "is not a vehicle for making new arguments … after the court has decided a motion for

19

summary judgment." *Lynch v. Crossroads Counseling Ctr., Inc.*, 2004 WI App 114, ¶23, 275 Wis. 2d 171, 684 N.W.2d 141.

¶45     In this case, however, the circuit court chose to address Lakeland's constitutional argument on reconsideration, and both parties have briefed the issue on appeal.  Moreover, the constitutionality of WIS. STAT. § 706.057(3) presents a question of law and is of sufficient public interest to merit a decision.  Under these circumstances, we exercise our discretion to address Lakeland's constitutional argument, despite Lakeland's failure to properly preserve the issue for review.  *See Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶¶52-53, 245 Wis. 2d 772, 629 N.W.2d 727.

¶46     We presume that statutes are constitutional.  *Mayo v. Wisconsin Injured Patients & Fams. Comp. Fund*, 2018 WI 78, ¶25, 383 Wis. 2d 1, 914 N.W.2d 678.  A party challenging the constitutionality of a statute bears a "very heavy burden" in overcoming that presumption.  *Id.*, ¶27.  Namely, the party must prove that the statute is unconstitutional "beyond a reasonable doubt."  *Id.* (citation omitted).  Stated differently, "[i]f any doubt persists about whether a statute is constitutional, we resolve [that] doubt in favor of concluding that the statute is constitutional."  *Id.*, ¶26.

¶47     Here, Lakeland argues the circuit court's interpretation of WIS. STAT. § 706.057(3) renders the statute unconstitutional as applied because it results in a taking of Lakeland's property without just compensation.  Article I, section 13 of the Wisconsin Constitution states that no person's property "shall be taken for public use without just compensation therefor."  Similarly, the Takings Clause of the Fifth Amendment to the United States Constitution, made applicable to the states

20

through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation."

¶48      Lakeland's argument regarding the constitutionality of WIS. STAT. § 706.057(3) is based entirely on the Wisconsin Supreme Court's decision in *Chicago & North Western Transportation Co. v. Pedersen*, 80 Wis. 2d 566, 259 N.W.2d 316 (1977).   In that case, the supreme court held that § 706.057's predecessor statute—WIS. STAT. § 700.30 (1977-78)[5]—was unconstitutional.   The court summarized the relevant provisions of that statute as follows:

> Sec[tion] 700.30, Stats. requires persons, other than surface fee owners and lessees holding leases of less than ten years, who claim title to mineral rights in land, to record their claims and pay a recording fee.   Non-exempt claimants are also required to pay an annual registration fee of fifteen cents for each acre of mineral rights claimed.   Failure to record claims of mineral rights or pay the annual registration fee results in reversion of the mineral rights to the surface fee owner.

*Chicago & N.W.*, 80 Wis. 2d at 570.

¶49      The supreme court concluded WIS. STAT. § 700.30 was unconstitutional because its enforcement provisions "den[ied] procedural and substantive due process." *Chicago & N.W.*, 80 Wis. 2d at 570-71.   With respect to procedural due process, the court noted that mineral rights are an interest in land, and "[b]efore a person may be deprived of property, that person has a right to a hearing." *Id.* at 571.   The court then concluded that because § 700.30 caused the plaintiffs' mineral rights to "revert to the surface owner if they are not registered or taxes are not paid on them," at the very least, the plaintiffs were entitled to "a hearing where they can question the determination of the register of deeds that the

---

[5]  All references to WIS. STAT. § 700.30 are to the 1977-78 version.

registration has not been done or that the taxes have not been paid." ***Chicago & N.W.***, 80 Wis. 2d at 572. The court further concluded that the plaintiffs were entitled to adequate notice of such a hearing, which the statute did not provide. ***Id.*** at 572-73. As such, the court stated the statute "unconstitutionally allows for the deprivation of property without [procedural] due process." ***Id.*** at 573.

¶50 The supreme court also agreed with the plaintiffs that WIS. STAT. § 700.30 violated substantive due process "by an unreasonable use of the police power because [the plaintiffs'] mineral rights revert to the surface owners if the rights are not registered or taxes are not paid." ***Chicago & N.W.***, 80 Wis. 2d at 574. The court explained that such automatic reversion violated "the rule that the legislature cannot take private property from one person for the private use of another." ***Id.*** The court rejected the attorney general's assertion that the private use was "so intimately connected with the public necessity of clearing up uncertainty over mineral right[s] ownership that there [was] a quasi-public use so as to justify the legislative taking of property for that purpose." ***Id.*** The court stated it was "questionable" whether clearing up uncertainty over mineral rights was "so important that the reversion of mineral rights to the surface owner becomes a quasi-public use." ***Id.*** at 575. The court also noted that § 700.30 did not provide any compensation for mineral rights owners whose rights reverted to surface owners. ***Chicago & N.W.***, 80 Wis. 2d at 575.

¶51 Lakeland argues that because the supreme court concluded WIS. STAT. § 700.30 was unconstitutional in ***Chicago & North Western***, we must similarly conclude that the circuit court's interpretation of WIS. STAT. § 706.057(3) renders that statute unconstitutional. There are at least three problems with this argument.

22

¶52 First, *Chicago & North Western* interpreted a different statute from the one at issue in this case. The *Chicago & North Western* court's decision was motivated by the fact that, under WIS. STAT. § 700.30, an owner's mineral rights automatically reverted to the surface owner if the mineral rights owner failed to register those rights or pay the required taxes. WISCONSIN STAT. § 706.057(3), in contrast, merely provides that an owner's mineral rights *lapse* if the owner does not use them for twenty years. Moreover, the statute provides a process by which an owner may cure such a lapse. *See* § 706.057(5). In addition, the statute requires a surface owner to record a statement of claim with respect to any lapsed mineral rights, *see* § 706.057(6), and it sets forth a process by which the ownership of mineral rights may be determined after a surface owner records a statement of claim, *see* § 706.057(9). Thus, the automatic reversion of mineral rights to the surface owner that occurred under § 700.30—and which motivated the supreme court's decision in *Chicago & North Western*—does not occur under § 706.057.

¶53 Second, *Chicago & North Western* addressed whether WIS. STAT. § 700.30 violated procedural and substantive due process. Here, Lakeland argues WIS. STAT. § 706.057(3) is unconstitutional because it results in a taking of Lakeland's property without just compensation. Although the *Chicago & North Western* court noted that § 700.30 did not provide compensation for mineral rights owners whose rights reverted to surface owners, the court did not expressly analyze whether that statute violated either the Takings Clause or article I, section 13 of the Wisconsin Constitution. Lakeland does not explain why the court's due process analysis in *Chicago & North Western* is relevant to Lakeland's argument that § 706.057(3) results in an unconstitutional taking.

¶54 Third, and perhaps most importantly, after the Wisconsin Supreme Court decided *Chicago & North Western*, the United States Supreme Court issued

23

its decision in *Texaco*. *Texaco* involved an Indiana statute "providing that a severed mineral interest that is not used for a period of 20 years automatically lapses and reverts to the current surface owner of the property, unless the mineral owner files a statement of claim in the local county recorder's office." *Texaco*, 454 U.S. at 518. Similar to WIS. STAT. § 706.057(3), the Indiana statute contained a "2-year grace period in which owners of mineral interests that were then unused and subject to lapse could preserve those interests by filing a claim in the recorder's office." *Texaco*, 454 U.S. at 518-19. The Indiana statute did not "require that any specific notice be given to a mineral owner prior to a statutory lapse of a mineral estate," although it did set forth a procedure by which a surface owner could give notice that a mineral interest had lapsed. *Id.* at 520.

¶55 The plaintiffs in *Texaco*—who were owners of lapsed mineral rights—asserted that the Indiana statute was unconstitutional on several grounds. The Supreme Court, however, rejected each of their arguments. First, the Court determined that Indiana had "the power to provide that property rights of this character shall be extinguished if their owners do not take the affirmative action required by the State." *Id.* at 525. The Court reasoned, "We have no doubt that, just as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that property right on the performance of reasonable conditions that indicate a present intention to retain the interest." *Id.* at 526.

¶56 The Court further concluded that Indiana had not exercised its power "in an arbitrary manner" because the statute provided that a mineral owner's rights would not lapse if the owner did one of three things during a twenty-year period: (1) engaged in actual production of minerals, or collected rent from another person who produced minerals or proposed to do so; (2) paid taxes; or (3) filed a written

24

statement of claim in the county recorder's office. *Id.* at 529. The Court concluded each of those actions furthered a legitimate state interest—either encouraging owners to develop their mineral interests or promoting the collection of property taxes. *Id.* The Court stated Indiana "surely has the power to condition the ownership of property on compliance with conditions that impose such a slight burden on the owner while providing such clear benefits to the State." *Id.* at 529-30.

¶57 The Court next rejected the plaintiffs' argument that the Indiana statute resulted in the taking of private property without just compensation. The Court explained:

> In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect. We have concluded that the State may treat a mineral interest that has not been used for 20 years and for which no statement of claim has been filed as abandoned; it follows that, after abandonment, the former owner retains no interest for which he may claim compensation. It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no "taking" that requires compensation. The requirement that an owner of a property interest that has not been used for 20 years must come forward and file a current statement of claim is not itself a "taking."

*Id.* at 530.

¶58 The Court also rejected the plaintiffs' claim that the Indiana statute was unconstitutional because it "extinguished their property rights without adequate notice." *Id.* at 531. The Court reasoned that, generally, "a legislature need do nothing more than enact and publish [a] law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Id.* at 532. The Court

noted that the two-year grace period in the Indiana statute "foreclose[d] any argument that the statute [was] invalid because mineral owners may not have had an opportunity to become familiar with its terms." *Id.* The Court also observed that property owners "are charged with knowledge of relevant statutory provisions affecting the control or disposition of [their] property." *Id.* In addition, the Court held that the plaintiffs had no constitutional right "to be advised—presumably by the surface owner—that their 20-year period of nonuse was about to expire." *Id.* at 533.

¶59 The Indiana statute at issue in *Texaco* provided that a mineral rights owner's interest reverted to the surface owner if not used for twenty years. Similarly, WIS. STAT. § 706.057(3) provides that a mineral rights owner's interest lapses if not used for twenty years. Moreover, both statutes set forth grace periods following their effective dates in which owners who did not use their mineral rights during the previous twenty years could take action to prevent those rights from lapsing. The Supreme Court concluded that the statute at issue in *Texaco* did not result in an unconstitutional taking of property without just compensation, and it also concluded the statute was not unconstitutional based on any lack of notice to mineral rights owners. The Court's conclusions in *Texaco* compel a conclusion in this case that § 706.057(3) does not result in an unconstitutional taking of

26

Lakeland's property without just compensation, nor does the statute violate due process for lack of notice.[6]

¶60    Lakeland argues, for two reasons, that we should follow *Chicago & North Western* instead of *Texaco*.  First, because *Texaco* did not expressly overrule *Chicago & North Western*, Lakeland asserts the latter case continues to "provide the standard for measuring the current statute."  We disagree.  As noted above, even absent the United States Supreme Court's decision in *Texaco*, Lakeland's reliance on *Chicago & North Western* is misplaced because that case: (1) addressed a statute that differed from WIS. STAT. § 706.057 in several important respects; and (2) did not expressly address whether the prior statute was unconstitutional on the grounds raised in this case—i.e., because it resulted in an unconstitutional taking of property without just compensation.  *Chicago & North Western* is therefore materially distinguishable and, as such, does not control our analysis in this case.

¶61    Second, Lakeland contends we should follow *Chicago & North Western* instead of *Texaco* because the United States Constitution is merely a "floor," and we should interpret the Wisconsin Constitution's "analogous due process rights" to "provide further protections."  Lakeland does not develop any

---

[6] Notably, WIS. STAT. § 706.057 was enacted after the Supreme Court issued its decision in *Texaco v. Short*, 454 U.S. 516 (1982).  The drafting file for WIS. STAT. § 706.057 contains an analysis by the Legislative Reference Bureau, which includes notes prepared by the Legislative Council.  Those notes acknowledge that WIS. STAT. § 700.30 had recently been found to be unconstitutional in *Chicago & North Western Transportation Co. v. Pedersen*, 80 Wis. 2d 566, 259 N.W.2d 316 (1977).  The notes also discuss the Supreme Court's holding in *Texaco* and the Indiana statute.  The notes then state:

> The legislative council mining committee concluded that the U.S. supreme court thoroughly considered all relevant legal issues raised by the Indiana statute, and resolved those issues on grounds which should be acceptable to Wisconsin courts.  Accordingly, the mining committee is proposing a mineral registration statute for Wisconsin based on the model provided by the Indiana statute.

argument, however, explaining *why* it believes we should interpret the Wisconsin Constitution as providing greater protection than the federal constitution under the circumstances of this case.

¶62    Although Wisconsin courts may conclude that the Wisconsin Constitution provides greater protection than the federal constitution, we do so "only in cases where either the state constitution or 'the laws of this state require that greater protection of the citizens' liberties ... be afforded.'" *State v. Agnello*, 226 Wis. 2d 164, 180, 593 N.W.2d 427 (1999) (citation omitted). "Where … the language of the provision in the state constitution is 'virtually identical' to that of the federal provision or where no difference in intent is discernible, Wisconsin courts have normally construed the state constitution consistent with the United States Supreme Court's construction of the federal constitution." *Id.* (citation omitted).    Here, Lakeland has not developed any argument that the relevant provisions in the state and federal constitutions are materially different, or that there is any discernable difference in their intent.    We therefore decline to interpret the Wisconsin Constitution as providing greater protection for Lakeland than the United States Constitution.[7]

¶63    Ultimately, Lakeland has failed to meet its heavy burden to prove, beyond a reasonable doubt, that WIS. STAT. § 706.057(3) is unconstitutional as applied.  As such, Lakeland has not established that the circuit court made a manifest

---

[7] In addition, we observe that the although the plaintiffs in *Chicago & North Western* asserted claims under both the state and federal constitutions, the Wisconsin Supreme Court did not separately analyze those claims.  Instead, the court stated that the due process protections provided by the state and federal constitutions are "substantially equivalent." *Chicago & N.W.*, 80 Wis. 2d at 571 n.1.  That statement further undermines Lakeland's argument that we should follow *Chicago & North Western*, instead of *Texaco*, because the Wisconsin Constitution provides greater protection than the United States Constitution.

error of law when interpreting that statute.  We therefore conclude that the court did not erroneously exercise its discretion by denying Lakeland's motion for reconsideration.

    *By the Court.*—Orders affirmed.