**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 17, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1121-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2021CT184**

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

NELSON HOLMES,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: T. CHRISTOPHER DEE, Judge. *Affirmed*.

¶1 WHITE, C.J.[1] Nelson Holmes appeals from the judgment entered upon a jury's verdict convicting him of operating a vehicle while under the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

influence of an intoxicant as a second offense contrary to WIS. STAT. § 346.63(1)(a). Holmes argues that the circuit court erred by admitting evidence that was testimonial hearsay which violated his constitutional right to confrontation of witnesses, and by admitting statements he made without receiving the requisite *Miranda*[2] warnings. For the following reasons, we affirm.

## BACKGROUND

¶2 On February 24, 2021, the State filed a criminal complaint charging Holmes with operating a vehicle while under the influence of an intoxicant, as a second offense, contrary to WIS. STAT. § 346.63(1)(a) and operating a vehicle with a prohibited alcohol concentration, as a second offense, contrary to § 346.63(1)(b). The State alleged that on January 15, 2021, Holmes caused a two-car accident at 1500 North 35th Street in the city of Milwaukee while intoxicated.

¶3 According to the complaint Holmes' vehicle struck another vehicle containing the driver, A.L., and a passenger, G.J.[3] After Officer Jordan Kunya and Officer Luis Madrigal arrived on the scene, A.L. and G.J. informed them that they believed Holmes was intoxicated and had taken his keys so that he would not flee the scene. Officer Kunya made contact with Holmes and noticed that his eyes were glassy, his speech was slurred, he had difficulty standing, and he smelled like

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we adopt the parties' use of initials to identify A.L. and G.J.

We note that there is contradictory evidence in the record regarding who was driving the vehicle Holmes struck. A.L. testified that G.J. was driving; however, Officer Kunya testified that G.J. was the passenger. The parties do raise this discrepancy as an issue so we do not discuss it further.

alcohol. Holmes initially agreed to perform standard field sobriety tests; however, Holmes was unable to complete the tests. Officer Kunya then arrested Holmes and took him to Aurora Mt. Sinai Hospital where Holmes' blood was tested and revealed to contain 0.312 g/100 mL of ethanol.

¶4 Holmes pled not guilty to both charges and the case was scheduled for a jury trial. Prior to the trial, the State moved to admit two recordings of phone calls that G.J. made to 911. The court held a hearing to consider the motion and found that the 911 calls were admissible as present sense impressions and excited utterances; however, the court held off on deciding whether to admit the 911 calls. At trial, Holmes argued that admission of the 911 calls would violate Holmes' right to confront witnesses because G.J. did not testify, only A.L. did. The court decided to only admit limited portions of the 911 calls—the first 40 seconds of the first call when G.J. first reports the accident and 20 seconds of the second call when the 911 operator establishes G.J.'s location, name, and phone number.

¶5 The parties and circuit court also discussed the admissibility of other evidence the State sought to admit: portions of police body and squad camera footage from the scene of the accident, the squad car, and the hospital. Holmes objected to the admission of portions of footage from Officer Kunya's body camera from the scene of the accident. Specifically, Holmes objected to a statement made by Officer Kunya to Holmes indicating that G.J. and A.L. saw Holmes hit them. The circuit court did not admit Officer Kunya's statement and the State agreed to mute that portion of the body camera footage. Immediately preceding closing arguments, the State moved to have it replayed unmuted. The court denied the State's motion.

¶6      Holmes also objected to footage showing Officer Kunya's and Officer Madrigal's first approach and questioning of Holmes.  Holmes argued that this questioning was a custodial interrogation under *Miranda* because G.J. and A.L. had given the officers Holmes' car keys.  The court admitted this footage reasoning that Holmes was not in custody when the officers first approached him because the act of civilians taking Holmes' car keys prior to the officers' arrival and then subsequently giving the keys to the officers did not transform the officers' initial approach into a custodial interrogation.

¶7      Holmes objected to two portions of footage taken from the squad car depicting statements by Holmes to Officer Kunya and Officer Madrigal.  In the footage, Holmes exclaimed that the squad car was "going right by" his car and expressed that he did not want his car towed.  The circuit court found that both portions were admissible because Holmes' statements were voluntary and not prompted by the officers.

¶8      Finally, Holmes objected to portions from the hospital footage of Officer Madrigal's body camera depicting Holmes and Officer Madrigal speaking while Holmes is handcuffed to a hospital bed.  Holmes argued that Officer Madrigal deliberately encouraged Holmes to continue speaking without giving Holmes *Miranda* warnings, thus violating Holmes' rights.  The circuit court disagreed and found that Holmes was speaking voluntarily and that Officer Madrigal was only "politely answering" and "not continuing the conversation any more than he possibly can."

¶9      Ultimately, the jury found Holmes guilty on both counts and Holmes was convicted and sentenced.  Holmes appeals.

**DISCUSSION**

¶10 Holmes argues that the admission of portions of the 911 calls absent G.J.'s testimony at trial violated his right to confrontation and that the circuit court erred in admitting the 911 calls because they are inadmissible hearsay. Holmes also argues that the court erred in admitting the statements he made to law enforcement at the scene of the accident, in the squad car, and at the hospital because he was not given the requisite *Miranda* warnings. We disagree, and take each argument in turn.

¶11 We must first determine whether Holmes' right to confrontation was violated by the circuit court's admission of portions of G.J.'s 911 calls without G.J.'s testimony at trial. The Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution "guarantee a criminal defendant the right to confront witnesses who testify against the defendant at trial." *State v. Mattox*, 2017 WI 9, ¶20, 373 Wis. 2d 122, 890 N.W.2d 256. "We generally apply United States Supreme Court precedent when interpreting these clauses." *Id.* (citation omitted). "[W]hether the admission of evidence violates a defendant's right to confrontation is a question of law subject to independent appellate review." *State v. Williams*, 2002 WI 58, ¶7, 253 Wis. 2d 99, 644 N.W.2d 919.

¶12 The Confrontation Clause "bars 'admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)). "[A] statement is testimonial if its primary purpose is 'to establish or prove past events potentially relevant to later criminal

proceedings.'" ***State v. Jensen***, 2021 WI 27, ¶4, 396 Wis. 2d 196, 957 N.W.2d 244 (citing ***Davis***, 547 U.S. at 822). "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." ***Michigan v. Bryant***, 562 U.S. 344, 360 (2011).

¶13 "[S]tatements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation." ***Id.*** at 370 Thus, "[t]he existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial." ***Id.*** (citation omitted). However, "whether an ongoing emergency exists is simply one factor—albeit an important factor—that informs the ultimate inquiry regarding the 'primary purpose' of an interrogation." ***Id.*** at 366.

¶14 Holmes argues that the admitted portions of the 911 calls are testimonial in nature reasoning that there was no ongoing emergency at the time because no one was injured in the car accident and both cars were on the side of the road.[4] We disagree. The portions of the 911 calls admitted are nontestimonial

---

[4] Holmes also argues that the circuit court failed to analyze and find that G.J. was unavailable to testify at trial as required to support admitting the 911 calls as testimonial evidence. *See **Crawford v. Washington***, 541 U.S. 36, 68 (2004) ("Where testimonial evidence is at issue … the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.") The State does not dispute the availability of G.J. and instead it argues that the 911 calls are nontestimonial so her availability is immaterial. Therefore, we do not discuss availability further. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) ("Respondents on appeal cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute." (Citation omitted)).

because the primary purpose was to enable law enforcement to respond to the car crash that had occurred immediately prior to the 911 calls. G.J. called 911 initially to seek police assistance because Holmes struck the vehicle she was in with his car. G.J. then followed up with a second 911 call shortly after the first because she was concerned that the police passed by her location. G.J. also expressed concern in both calls that Holmes was attempting to flee the scene and could harm someone else due to his level of intoxication.

¶15 It is clear from the content and context of the 911 calls that the primary purpose of G.J.'s statements were not to create an out-of-court substitute for trial testimony relevant to later prosecution but instead to seek police assistance in response to the car accident. Furthermore, the circuit court only admitted the first 40 seconds of the first call during which the 911 operator responded to G.J.'s call and G.J. explained that she was hit by another vehicle, that the driver was drunk, and gave her location. The 20 seconds of the second 911 call admitted consists of initial questioning by the 911 operator establishing G.J.'s location, name, and phone number. While later portions of the 911 calls may have contained testimonial statements, those portions were not admitted to the jury. *See Davis*, 547 U.S. at 828-29.

¶16 The initial questioning by the 911 operator was not "solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator," but was rather meant to obtain basic information about the current circumstances to assist police in responding to the car accident. *See Davis*, 547 U.S. at 826-27 ("[T]he initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." (Alterations in original)). The lack of injuries resulting from the car accident also

7

does not render G.J.'s statements testimonial. G.J. had just been in a car accident, believed that Holmes was trying to flee the scene, and called 911 for assistance with that situation. G.J. was not acting as a witness and testifying in that moment. *See id.* at 828 ("No 'witness' goes into court to proclaim an emergency and seek help.") Therefore, we conclude that the circuit court's admission of portions of the 911 calls did not violate Holmes' right to confrontation.

¶17 We must also determine whether the circuit court properly admitted the 911 calls as present sense impressions and excited utterances. "We review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard." *State v. Nieves*, 2017 WI 69, ¶16, 376 Wis. 2d 300, 897 N.W.2d 363 (citation omitted). "As with other discretionary determinations, this court will uphold a decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698.

¶18 Holmes argues that the circuit court erred in finding that the 911 calls fell into the present sense impression and excited utterance hearsay exceptions.[5] We disagree, and conclude that the portions of the 911 calls admitted

---

[5] Holmes also argues that Officer Kunya's statement to Holmes indicating that G.J. and A.L. told Officer Kunya that they witnessed the collision was inadmissible hearsay. The State responds that this statement was never admitted and played to the jury because the State played this portion of body camera footage muted and the court denied the State's subsequent motion to admit this statement by playing the footage unmuted. Holmes declined to file a reply brief contesting the State's response. *See United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (explaining that the failure by the appellant to respond in a reply brief to an argument made in the respondent's brief may be taken as a concession). Upon review of the record we agree with the State that this statement was never admitted and shown to the jury; therefore, the circuit court did not err.

were properly admitted as present sense impressions. Because we conclude that the 911 calls are admissible as present sense impressions, we need not address whether they are also admissible as excited utterances. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

¶19 A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." WIS STAT. § 908.03(1). Present sense impressions can be admitted regardless of the availability of the declarant. § 908.03.

¶20 Holmes specifically argues G.J.'s statements in the 911 calls do not qualify as present sense impressions because they were not made while G.J. was witnessing an ongoing emergency. However, there is no requirement for present sense impressions to be made simultaneously with an active emergency; instead, § 908.03(1) explicitly includes statements made "immediately thereafter" an "event or condition." *See also State v. Ballos*, 230 Wis. 2d 495, 505, 602 N.W.2d 117 (Ct. App. 1999) (recognizing that 911 evidence can be admissible as present sense impressions). Immediately prior to G.J.'s 911 calls she had been in a car crash and believed that Holmes was attempting to flee the scene. The circuit court did not err by finding the initial portions of the 911 calls admissible as present sense impressions.

¶21 Finally we address Holmes' contention that the circuit court erred by admitting the statements he made at the scene of the accident, in the squad car, and at the hospital because he was not given *Miranda* warnings.

¶22     *Miranda* warnings[6] are necessary to protect a person's Fifth and Fourteenth Amendment privilege against compulsory self-incrimination when he or she is subject to a "custodial interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980). Custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Berkemer v. McCarty*, 468 U.S. 420, 428 (1984). Thus, in order to ascertain whether *Miranda* warnings were required, we must resolve whether (1) the defendant was in custody and (2) subject to interrogation. *State v. Dobbs*, 2020 WI 64, ¶¶53, 66, 392 Wis. 2d 505, 945 N.W.2d 609. Whether Holmes was subject to a custodial interrogation is a question of law that we review independently. *Id.*, ¶¶28-29.

¶23     Holmes' *Miranda* argument consists of a conclusory statement that the circuit court erred, a recitation of the law governing *Miranda* warnings generally, and a two-sentence summary of facts which support that Holmes was in custody after he was arrested and that he was not administered *Miranda* warnings.[7] However, Holmes' statements at the scene occurred *prior* to his arrest and Holmes does not put forth an argument that he was subject to a custodial interrogation when he made those statements.

---

[6] *Miranda* warnings are "namely, that the defendant be informed 'that he [or she] has the right to remain silent, that anything he [or she] says can be used against him [or her] in a court of law, that he [or she] has the right to the presence of an attorney, and that if he [or she] cannot afford an attorney one will be appointed for him [or her] prior to any questioning if he [or she] so desires'—or their equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980) (citing *Miranda*, 384 U.S. at 479).

[7] Holmes also asserts that he did not knowingly and intelligently waive his *Miranda* rights.

¶24 Additionally, the State does not dispute that Holmes was in custody when he made statements in the squad car and at the hospital. Rather, the State argues in response that the circuit court properly admitted Holmes' statements on the basis that his statements were made voluntarily without prompting by the officers, thus he was not subject to interrogations requiring *Miranda* warnings. Holmes' brief-in-chief does not address whether he was subject to interrogation and he declined to file a reply brief disputing the State's argument. Therefore, we consider it conceded.[8] *See United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (explaining that the failure by the appellant to respond in a reply brief to an argument made in the respondent's brief may be taken as a concession); *see also Lakeland Area Prop. Owners Ass'n, U.A. v. Oneida Cnty.*, 2021 WI App 19, ¶17, 396 Wis. 2d 622, 957 N.W.2d 605 ("We will not abandon our neutrality to develop arguments for the parties.").

## CONCLUSION

¶25 We conclude that the circuit court properly admitted portions of the 911 calls and Holmes' statements from the scene of the accident, squad car, and hospital. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[8] We note that the record supports the State's argument.