COURT OF APPEALS
DECISION
DATED AND FILED

April 28, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1163-CR**

Cir. Ct. No. **2019CT34**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

DOMINIC A. CALDIERO,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Waupaca County: RAYMOND S. HUBER, Judge. *Affirmed.*

¶1 GRAHAM, J.[1] Dominic Caldiero was arrested for his third operating while intoxicated (OWI)-related offense in January 2019. Caldiero provided a blood sample, and chemical testing revealed an alcohol concentration

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20).

of 0.072 grams per 100 milliliters. The State determined that, at the time of his January 2019 arrest, Caldiero was subject to an ignition interlock device order, which had been issued in September 2015 following his second conviction of an OWI-related offense. Therefore, the State determined that Caldiero's maximum allowable blood alcohol concentration was 0.02 pursuant to WIS. STAT. § 340.01(46m) (2019-20) and WIS. STAT. § 343.301 (2013-14).[2] Caldiero was charged with operating a motor vehicle with a prohibited blood alcohol concentration, third offense, and he was convicted following a jury trial.

¶2      Caldiero argues that the circuit court should have granted his pretrial motion to dismiss the prohibited blood alcohol concentration charge, or alternatively, his postconviction motion to vacate his conviction of that offense. He contends that, at the time of his arrest in January 2019, he was no longer subject to the September 2015 ignition interlock device order. According to Caldiero, that order had expired, and therefore the prohibited alcohol concentration that applied to him at the time of his arrest was actually the default prohibited alcohol concentration, 0.08.

---

[2] WISCONSIN STAT. § 343.301, which pertains to court orders relating to ignition interlock devices, was amended in 2016 and 2017. *See* 2016 Wis. Act 389 (effective Oct. 2, 2016) and 2017 Wis. Act 124 (effective Dec. 9, 2017). These amendments are reflected in the 2015-16 version of the statutes, published in January 2017, but they were not in effect in September 2015, when the ignition interlock device order at issue in this case was issued. Caldiero and the State both rely on the 2013-14 version of § 343.301, which was in effect in September 2015, for their substantive analysis in this appeal, and I follow their lead. Accordingly, although sometimes I discuss that statute using the present tense, all references to § 343.301 are to the 2013-14 version.

Apart from the amendments to WIS. STAT. § 343.301, there have been no material changes to the applicable statutory provisions during the relevant time periods. Accordingly, for ease of reference, all references to provisions in the Wisconsin Statutes other than § 343.301 are to the 2019-20 version.

¶3      For the reasons explained below, I conclude that the September 2015 order had not expired—and that Caldiero continued to be subject to that order—when he was arrested in January 2019.  Therefore, I conclude that the circuit court properly denied Caldiero's pretrial motion to dismiss and his postconviction motion to vacate his conviction of the prohibited alcohol concentration charge.  I also reject Caldiero's alternative argument that he is entitled to additional sentence credit.  Accordingly, I affirm the judgment of conviction and the order denying Caldiero's postconviction motion.

## BACKGROUND

¶4      Caldiero had two prior OWI-related offenses in January 2019 when he was arrested for his third such offense, which is the subject of this appeal.[3]  The parties' arguments turn on the legal consequences of Caldiero's conviction for his second OWI-related offense, Waupaca County Case No. 2015CT55.

¶5      Caldiero was convicted and sentenced in Case No. 2015CT55 on September 21, 2015.  During sentencing, the circuit court revoked Caldiero's operating privilege for a period of 13 months, effective immediately.  Additionally, the parties agree that, consistent with WIS. STAT. § 343.301(1g) (2013-14), the court was required to order that Caldiero's operating privilege would be subject to a restriction lasting at least one year, during which Caldiero

---

[3] Throughout this opinion, I use the term "OWI-related offenses" to refer to convictions, suspensions, and revocations that are enumerated in WIS. STAT. § 343.307(1).

3

could only drive vehicles that were equipped with an ignition interlock device.[4] Although the transcript is not entirely clear on this point, the parties appear to agree that the court-ordered restriction on Caldiero's operating privilege would last 13 months. Throughout this opinion, I refer to the ignition-interlock-related order issued at sentencing in Case No. 2015CT55 as the "September 2015 order."

¶6 It is undisputed that Caldiero never sought to reinstate his operating privilege with the state department of transportation, and that his operating privilege was still revoked at the time he was arrested for the current offense. It is not clear from the record whether Caldiero ever installed an ignition interlock device on any vehicle titled or registered in his name. However, the vehicle Caldiero was driving in when he was pulled over in January 2019 did not have any such device.

¶7 The State charged Caldiero with several offenses stemming from the events of January 11, 2019. The charges included one count of operating a motor vehicle with prohibited alcohol concentration, third offense (hereinafter, the "PAC

---

[4] The transcript of Caldiero's sentencing in Case No. 2015CT55 does not expressly mention any restriction on his operating privilege. The circuit court stated, "I will make the revocation effective forthwith giving [Caldiero] credit for any period of administrative suspension that may have been put into place." The court continued, "I will revoke your driving privileges for a period of 13 months. If I didn't indicate, the revocation is 13 months. I will direct that during that period of revocation you operate vehicles equipped with ignition interlock devices."

Although the transcript is unclear in certain respects, Caldiero does not argue that the circuit court failed to restrict his operating privilege as required by WIS. STAT. § 343.301(1g) (2013-14). Instead, as discussed below, Caldiero's argument is that the 2013-2014 version of § 343.301(2m) allowed the court to order that the 13-month restriction on his operating privilege would run "alongside [the] 13-month revocation of his driver's license," and, according to Caldiero, that was what the circuit court ordered in Case No. 2015CT55.

charge") and one count of operating a motor vehicle while revoked.[5]  As it relates to the PAC charge, the complaint alleged that Caldiero operated a motor vehicle with an alcohol concentration of 0.072 at a time in which he was "subject to" an ignition interlock order under WIS. STAT. § 343.301.  Thus, the complaint alleged that his maximum allowable alcohol concentration was 0.02 by operation of WIS. STAT. § 340.01(46m).

¶8     Caldiero moved to dismiss the PAC charge on the ground that he was not "subject to" an ignition interlock device order under WIS. STAT. § 343.301 (2013-14).  He initially argued that, based on the language of the 2013-14 statute, the September 2015 order "would not have yet started to run" until such time his driver's license was reinstated by the department of transportation, which had not yet occurred.  Later, he argued that the 13-month restriction on his operating privilege had been effective immediately, and therefore, that the restriction had long since expired.  Either way, he contended, he was not subject to the September 2015 order, and therefore, he was not subject to a maximum allowable alcohol concentration of 0.02.  The circuit court denied the motion.

¶9     Caldiero pled guilty to operating a motor vehicle while revoked. The case proceeded to trial on the PAC charge, and the jury returned a guilty verdict.  The circuit court sentenced Caldiero to 60 days confinement in the county jail.  It stayed all but 14 of those days pending Caldiero's completion of a

_____

[5] The State also charged Caldiero with one count of operating a motor vehicle while intoxicated and one count of failing to install an ignition interlock device.  Both of these counts were dismissed before trial, and neither party challenges the dismissal of either count on appeal. As a result, I discuss these two counts no further.

diversion program, and it stayed all but the first 48 hours of his jail sentence pending appeal.

¶10    Caldiero filed a postconviction motion to vacate his conviction of the PAC charge.  In the motion, Caldiero renewed his argument that the September 2015 order expired 13 months after it was issued, and therefore, that the prohibited alcohol concentration that applied to him when he was arrested in January 2019 was actually 0.08.  Separately, Caldiero sought 14 days of sentence credit.  I present additional information regarding the motion for sentence credit in the discussion section below.

¶11    The circuit court denied Caldiero's postconviction motion to vacate the conviction of the PAC charge.  Regarding sentence credit, the court granted four days of credit but denied his request for 10 additional days.  Caldiero appeals.

## DISCUSSION

¶12    On appeal, Caldiero renews his argument that he should not have been convicted of operating a motor vehicle with a prohibited alcohol concentration.  In the alternative, Caldiero argues that he is entitled to 10 additional days of sentence credit.  I address each of these arguments in turn, ultimately rejecting both.

## I

¶13    Caldiero maintains that when he was pulled over in January 2019, he was not driving with a prohibited alcohol concentration.  He argues that, based on his interpretation of two interrelated statutes, WIS. STAT. §340.01(46m) and WIS. STAT. § 343.301 (2013-14), the prohibited alcohol concentration that applied to

him was 0.08. Statutory interpretation presents a question of law, which I review de novo. *State v. Arberry*, 2018 WI 7, ¶14, 379 Wis. 2d 254, 905 N.W.2d 832.[6]

¶14 WISCONSIN STAT. § 340.01(46m)(a) sets forth a default prohibited alcohol concentration of 0.08 for most Wisconsin drivers. However, under certain circumstances, a person is prohibited from driving with "an alcohol concentration of more than 0.02." *See* § 340.01(46m)(c). One such circumstance is if the person is "subject to an order under s. 343.301." *Id.* If so, the person's maximum allowable alcohol concentration is 0.02. *Id.*

¶15 Accordingly, this case turns on whether, as a consequence of his second OWI-related conviction in September 2015, Caldiero was "subject to an order under s. 343.301" (2013-14) at the time he was arrested in January 2019. If so, he was properly charged with and convicted of the PAC charge. But if not, the criminal complaint failed to allege that Caldiero operated a motor vehicle with a prohibited alcohol concentration, and the jury instructions did not accurately inform the jury of the prohibited alcohol concentration that applied to Caldiero.

¶16 In addressing Caldiero's argument that he was not "subject to an order under s. 343.301" in January 2019, I begin by summarizing some of the statutory consequences of OWI-related offenses. Wisconsin Statutes impose consequences beyond jail time and fines for such offenses, and the consequences escalate with each subsequent offense. Among other things, when sentencing a

---

[6] When I interpret a statute, I begin with its plain language. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. I give that language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* I interpret statutory language in the context in which it is used, in relation to the language of surrounding or closely related statutes, and in a reasonable manner, to avoid absurd or unreasonable results. *Id.*, ¶46.

person for their second OWI-related offense, "the court shall revoke the person's operating privilege for not less than one year nor more than 18 months." WIS. STAT. § 343.30(1q)(b)3. Additionally, the court must make orders restricting the person's operating privilege to vehicles equipped with an ignition interlock device, and requiring the person to install such devices on certain vehicles. The requirements related to ignition interlock devices are found in WIS. STAT. § 343.301 (2013-14) and are the focus of this appeal.

¶17   WISCONSIN STAT. § 343.301 (2013-14) provides in relevant part:

> (1g) A court *shall order a person's operating privilege ... be restricted* to operating vehicles that are equipped with an ignition interlock device *and*, [with exceptions that are inapplicable here,] *shall order that each motor vehicle* for which the person's name appears on the vehicle's certificate of title or registration *be equipped with an ignition interlock device* ….
>
> ….
>
> (2m) The court *shall restrict the operating privilege* under sub. (1g) for a period of not less than one year nor more than the maximum operating privilege revocation period permitted for the refusal or violation, *beginning on the date the department issues any license* granted under this chapter, [with exceptions that are inapplicable here]. The court *may order the installation of an ignition interlock device under sub. (1g) immediately* upon issuing an order under sub. (1g).

(Emphasis added.)

¶18   Plainly, WIS. STAT. § 343.301(1g) (2013-14) imposes two separate requirements. It requires that, at the time the person's driver's license is reinstated following revocation, the operating privilege will come with a restriction—the person will only be allowed to operate vehicles that are equipped with an ignition

8

interlock device. *Id.* Separately, it also requires that the person install an ignition interlock device on any vehicle that is titled or registered in the person's name. *Id.*

¶19 Turning to WIS. STAT. § 343.301(2m) (2013-14), that subsection plainly provides separate timelines for these two requirements. The restriction on the person's operating privilege "begin[s] on the date the department [of transportation] issues any license." *Id.* As for the order requiring the installation of an ignition interlock device, the court may, in its discretion, order installation to happen "immediately" upon issuance of the subsection (1g) order. *Id.* In other words, under subsection (2m), the court may require a person to immediately install ignition interlock devices on vehicles titled or registered in the person's name—even though the person should not be driving at all during this period because their operating privilege has been revoked pursuant to WIS. STAT. § 343.30(1q)(b)3.

¶20 During the circuit court proceedings, Caldiero argued that he was not subject to an order under WIS. STAT. § 343.301 (2013-14) because he had not yet sought reinstatement of his driver's license. This court rejected an identical argument in *State v. Quisling*, No. 2017AP1658, unpublished slip op. (WI App April 12, 2018).[7] In that case, Quisling argued that he was not "subject to an order under § 343.301" at the time of his most recent arrest for an OWI-related offense because the order requiring him to install a device was contingent on the department of transportation issuing him a Wisconsin driver's license, which had not yet occurred. *Id.*, ¶¶8, 21. This court interpreted WIS. STAT. § 343.301

---

[7] WISCONSIN STAT. RULE 809.23(3)(b) allows the citation of an unpublished, authored opinion issued after July 1, 2009, for its persuasive value.

9

(2013-14) and concluded that, based on its "plain meaning," Quisling was "'subject to an order under s. 343.301'" when the circuit court issued the order under that section, and that Quisling "remained a 'person subject' to that order" when he was arrested 18 months later, "even though the department had not yet issued a Wisconsin license to him, and perhaps never would." *Id.*, ¶22.

¶21    The *Quisling* opinion was issued by one judge, and therefore, it has no precedential value. WIS. STAT. RULE 809.23(3)(b). However, it may be cited for persuasive value, and, in my view, it persuasively interprets the statutes at issue in this case. If, in his opening appellate brief, Caldiero had renewed his argument that he was not yet "subject to an order under s. 343.301" (2013-14) because he had not sought reinstatement of his driver's license, I would have rejected that argument for the same reasons this court rejected the arguments advanced in *Quisling*.

¶22    I now turn to the argument that Caldiero has renewed on appeal— that the requirements of the September 2015 order had already expired when Caldiero was arrested in January 2019. Caldiero bases this argument on his interpretation of WIS. STAT. § 343.301(2m) (2013-14). According to Caldiero, "the law in effect at the time" he was sentenced in September 2015 "provided that the restriction(s) on driving privileges would begin on the date that a license was later issued, *unless the trial court had immediately ordered the installation of an ignition interlock device*." (Emphasis added.) In other words, Caldiero argues that the 2013-14 statute provided a "default start date of the ignition interlock requirement," but that the statute also gave the court discretion to order the immediate installation of the device. Caldiero contends that the court ordered him to install an ignition interlock device during the 13-month period in which his operating privilege was revoked. Therefore, he contends, the requirement that he

10

install an ignition interlock device, which began in September 2015, expired no more than 13 months later in October 2016.

¶23     I reject Caldiero's interpretation because it improperly conflates the two separate requirements in WIS. STAT. § 343.301 (2013-14).  Caldiero is correct insofar as he argues that the court had discretion under the 2013-14 statute to order the immediate installation of an ignition interlock device.  However, even if the court ordered him to immediately *install* a device, that does not mean that the *restriction on his operating privilege* began to run on the date the court issued the September 2015 order.  The September 2015 order revoked Caldiero's operating privilege for 13 months; therefore, he had no operating privilege to restrict at that time.  Caldiero's argument that the restriction on his operating privilege ran alongside the revocation of his operating privilege defies any reasonable interpretation of the statute—a driver cannot have his operating privilege revoked and, at the same time, have an operating privilege that is subject to a restriction.

¶24     As stated above, and contrary to Caldiero's interpretation, the plain language of WIS. STAT. § 343.301(1g) (2013-14) demonstrates that the restriction on Caldiero's license is separate from the requirement that he install an ignition interlock device on vehicles titled or registered in his name.  In other words, it does not matter whether or not the court ordered Caldiero to immediately install such a device—under (2m), the restriction on Caldiero's operating privilege will "begin[] on the date the department [of transportation] issues any license."  *Id.* And, as in *Quisling*, the fact that Caldiero had not yet sought reinstatement of his operating privilege has no bearing on the application of the statute. *Quisling*, No. 2017AP1658, ¶22.  Therefore, Caldiero continues to be "subject to an order under s. 343.301" (2013-14) until the department reinstates his license and the period of restriction runs its course.

11

¶25 Before concluding, I pause to acknowledge that, as mentioned above, the transcript from Caldiero's sentencing in 2015TR55 is less than clear on several points. *See supra* n.4. However, Caldiero's sole argument is based on his interpretation of the 2013-14 version of the statute, and I have rejected that interpretation. Caldiero has not argued that the court failed to issue an order required by WIS. STAT. § 343.301(1g) (2013-14). Nor has he argued that any failure to do so would override the mandatory language of that statute. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (explaining that issues not raised in the circuit court are forfeited); *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (an appellate court "cannot serve as both advocate and judge" and will not develop arguments on an appellant's behalf).

¶26 In sum, I conclude that Caldiero became a person "subject to" an order under WIS. STAT. § 343.301 (2013-14) upon issuance of the September 2015 order, and that he remained a "person subject" to that order when he was arrested in January 2019. Therefore, his maximum allowable prohibited alcohol concentration was 0.02 at the time of his arrest, and Caldiero has not established grounds to vacate his conviction of the PAC offense.[8]

---

[8] Given my conclusion about the proper interpretation of WIS. STAT. § 343.301 (2013-14), I need not address the parties' additional arguments about policy considerations and the subsequent amendments to that statute. *Lakeland Area Prop. Owners Assoc., U.A. v. Oneida Cnty.*, 2021 WI App 19, ¶17, 396 Wis. 2d 622, 957 N.W.2d 605 (a court "need not address all arguments raised by the parties if one of those arguments is dispositive").

**II**

¶27    In the alternative, Caldiero contends that he is entitled to 10 additional days of sentence credit.  The State contends that Caldiero is not entitled to any additional credit.  To resolve this dispute, I apply WIS. STAT. § 973.155 and existing case law to undisputed facts.  This presents a question of law, which I review de novo.  *State v. Tuescher*, 226 Wis. 2d 465, 468, 595 N.W.2d 443 (Ct. App. 1999).

¶28    WISCONSIN STAT. § 973.155(1)(a) provides that "[a] convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed."[9]  The offender is entitled to one day of sentence credit for each day served, but credit "is not to be duplicatively [given] to more than one of the sentences imposed to run consecutively."  *State v. Boettcher*, 144 Wis. 2d 86, 87, 423 N.W.2d 533 (1988).  As our supreme court has explained, "[t]he total time in

---

[9]  WISCONSIN STAT. § 973.155(1)(a) provides in its entirety:

> A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed.  As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
>
> > 1. While the offender is awaiting trial;
> >
> > 2. While the offender is being tried; and
> >
> > 3. While the offender is awaiting imposition of sentence after trial.

13

custody should be credited on a day-for-day basis against the total days imposed in the consecutive sentences." *Id.* at 100.

¶29    The parties agree that Caldiero was arrested on January 11, 2019, and, at that time, he was also on probation for a prior 2018 conviction for battery in Waupaca County Case No. 2018CM204. Caldiero remained in custody for four days (from January 11-14) in connection with the PAC charge. Then, on January 14, Caldiero signed a signature bond releasing him from custody for the charges in the present case. He nevertheless remained in custody for ten days (from January 15-24) as a result of the probation hold in Case No. 2018CM204. Caldiero was released from custody on January 24.

¶30    In his postconviction motion, Caldiero argues that he was in custody for a total of 14 days in connection with the course of conduct for which his sentence for the PAC conviction was imposed. The State stipulated that Caldiero was entitled to four days of sentence credit, and the circuit court granted credit for four days, corresponding with January 11-14, 2019. However, the court denied sentence credit for the 10 days starting with January 15 that he remained in custody on the probation hold in Case No. 2018CM204.

¶31    The State does not appeal the circuit court's decision, consistent with its stipulation, to award four days of sentence credit corresponding with Caldiero's pretrial custody from January 11-14, 2019; therefore, I do not weigh in on whether those four days of credit were properly awarded. As to Caldiero's argument in favor of an additional 10 days of credit corresponding to his pretrial custody from January 15-24, 2019, I conclude that Caldiero is not entitled to sentence credit.

¶32    Caldiero does not dispute the State's assertions that he finished serving his sentence in Case No. 2018CM204 no later than December 2019, and

that he did not start serving any portion of his sentence for the current PAC offense until after he was sentenced in January 2020. Accordingly, Caldiero does not meaningfully argue that he served any portion of his sentence in Case No. 2018CM204 concurrently with the sentence he has yet to serve in this case. Nor does he dispute the State's contention that the circuit court awarded him 14 days of credit, corresponding with January 11-25, 2019, when it sentenced him to time served in Case No. 2018CM204.

¶33 Instead, Caldiero contends that this is not a case where the general prohibition against dual credit for consecutive sentences would apply. His argument appears to be based on an assertion that the circuit court did not specifically designate the sentence in this case as "consecutive" to his sentence in Case No. 2018CM204. Therefore, he contends, his sentence in this case is concurrent to any other sentence "by default," and he should be given dual credit.

¶34 This court rejected a similar argument in *State v. Morrick*, 147 Wis. 2d 185, 188-89, 432 N.W.2d 654 (Ct. App. 1988). In that case, Morrick likewise sought dual credit for two sentences that were separately imposed. And, as here, Morrick argued that the sentences could not be considered "consecutive" for purposes of determining sentence credit because there was a gap between when he finished serving the first-imposed sentence and when he started serving the later-imposed sentence. *Id.* at 188. This court flatly rejected that argument. *Id.* We acknowledged that Morrick's two sentences were not "consecutive" in the technical sense of the term, given the gap between the sentences. *Id.* at 187. However, we concluded that, with respect to sentence credit, there was "no difference in principle" between "consecutive sentences and the two separate and distinct sentences at issue [in Morrick's case]." *Id.* at 191. We emphasized that *Boettcher* requires "day-for-day credit for the time served, no more and no less;

15

and that is what [Morrick] received." ***Id.*** By contrast, if we were to award dual credit, it "would be authorizing double credit for time served … in violation of the spirit, if not the letter, of ***Boettcher***." ***Id.***

¶35 Likewise, in ***State v. Jackson***, 2000 WI App 41, 233 Wis. 2d 231, 607 N.W.2d 338, this court was presented with a similar fact pattern, and we again rejected the defendant's request for dual credit. As we explained, "[t]he core idea of ***Boettcher*** is that 'dual credit is not permitted' where a defendant has already received credit against a sentence which has been, or will be, separately served." ***Id.***, ¶19.

¶36 So too here. Caldiero does not dispute that he has already received credit in Case No. 2018CM204 for his time spent in pretrial custody from January 15-24, 2019. If I were to conclude that Caldiero should be awarded additional credit for those days in pretrial custody, I would be authorizing dual credit in violation of ***Boettcher***, ***Morrick***, and ***Jackson***.[10]

---

[10] I recognize that the circuit court did not employ this reasoning when it determined that Caldiero was not entitled to 10 days credit to correspond with the time he spent in custody from January 15-24, 2019. Regardless, as noted above, the proper amount of sentence credit is an issue subject to de novo review.

Finally, I note that the state advances a confusing argument on appeal. The State relies on ***State v. Beets***, 124 Wis. 2d 372, 379, 369 N.W.2d 382 (1985), for the proposition that "the connection" between Caldiero's arrest for the PAC offense and his custody on the probation hold "was severed when the custody resulting from the probation hold was converted into a revocation and fully completed jail sentence in the battery case." I need not consider this argument because Caldiero is not entitled to any additional credit for the reasons explained above. *See supra*, ¶¶31-36.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.